# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GARY DEWAYNE AMERICA,**

    **Plaintiff,**

**v.**                                        **Civil Action No. 5:07cv80**
                                                        **(Judge Stamp)**

**GEORGE TRENT and DR. KATINY,**

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

On June 18, 2007, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants. On September 28, 2007, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate at that time. Accordingly, the defendants were directed to file an answer to the complaint.

On October 31, 2007, defendant Trent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum in Support. A <u>Roseboro</u> Notice issued on November 1, 2007.

On November 5, 2007, defendant Katiny filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and a Memorandum in Support. A <u>Roseboro</u> Notice issued on November 8, 2007.

On November 29, 2007, defendant Trent filed a Supplement to his Motion to Dismiss.

On December 11, 2007, the plaintiff filed a reply to the defendants' motions.

This case is before the undersigned for a preliminary review and report and recommendation pursuant to LR PL P 83.02, <u>et</u> <u>seq.</u>, and 28 U.S.C. §§ 1915(e) and 1915A.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that he was arrested on November 8, 2006, and held in the North Central Regional Jail. On November 16, 2006, the plaintiff asserts that while he was cleaning the shower in the POD, he picked up a bucket and felt a pain in his belly. Thinking that he only pulled a muscle, the plaintiff went on to clean the shower.

The next morning, the plaintiff felt pain in his belly when he tried to get out of bed. Moreover, over the next two or three days, the plaintiff noticed a "knot" forming in his belly. Consequently, the plaintiff filed a non-emergent sick-call request. However, the plaintiff asserts that three weeks went by and he still had not received a medical appointment. Shortly thereafter, the plaintiff saw a nurse in a hallway and explained his condition to her. Two or three days later, the plaintiff received an appointment with Dr. Katiny. At the appointment, Dr. Katiny allegedly informed the plaintiff that there was nothing to worry about. Thus, the plaintiff did not seek medical attention for another month. Because, however, the knot allegedly got bigger, the plaintiff eventually put in another request for sick-call. In response to his request, the plaintiff alleges that Dr. Katiny told him that an outside consult had been ordered and that the plaintiff was scheduled for the consult on March 14, 2007. The plaintiff asserts that this is the last he heard from Dr. Katiny.

As a result of the plaintiff's alleged injury, he asserts that the pain gets worse everyday, leaving him unable to work. Thus, the plaintiff asks the Court to help him "get his problem taken care of."

### B. Defendant Trent's Motion and Supplement

In his motion to dismiss, defendant Trent seeks the dismissal of the complaint for the following reasons:

(1) the plaintiff failed to exhaust his administrative remedies;

(2) the defendant is entitled to qualified immunity:

(3) the plaintiff's claims are barred by Eleventh Amendment Immunity; and

(4) the plaintiff has failed to state a cognizable claim for denial of medical treatment and has failed to show that defendant Trent had any personal involvement in the alleged denial of medical care.

In addition, in he memorandum in support of his motion, defendant Trent also asserts that the plaintiff's claims are now moot because the plaintiff had been transferred from the Regional Jail to the custody of the West Virginia Department of Corrections.

In his supplement, defendant Trent withdraws his mootness argument because the plaintiff was subsequently returned to the custody of the Regional Jail Authority.

## C.  Dr. Katiny's Motion

In his motion, Dr. Katiny seeks the dismissal of the complaint for the following reasons:

(1) the plaintiff failed to exhaust administrative remedies; and

(2) the plaintiff's claims are moot by virtue of his transfer to the custody of the West Virginia Department of Corrections.

## D.  The Plaintiff's Reply

In his reply, the plaintiff seeks the denial of the defendants' motions on three grounds. Unfortunately, only ground one and three are entirely clear. The plaintiff makes the following arguments:

(1) grievance was never acted upon;

(2) affidavit of John King merely claims that an "apail" was requested; and

(3) plaintiff currently lodged in North Central Regional Jail and therefore, the case is not

moot.[1]

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid

---

[1] Because the plaintiff has been returned to the custody of the Regional Jail Authority, the defendants' assertions that his case is moot is no longer tenable. Therefore, the defendants' requests for dismissal based on mootness should be **DENIED**.

weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### IV. Analysis

**A. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes"[2] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741, n. 6.

According to the inmate handbook for the Regional Jail Authority, the Regional Jail Authority has a three-step grievance process. First, the prisoner must file a Level One grievance with the Administrator on an inmate grievance form which is to be provided by jail personnel. If unsatisfied with the Level One decision, the prisoner may proceed to Level Two by filing an appeal with the Chief of Operations. Such appeal must be filed, in writing, within five days of the receipt of the Administrator's decision and must include a copy of the initial complaint and the Administrator's decision. Within five (5) days of receipt of a Level Two Decision, an inmate may request a review by the office of the Executive Director. The inmate must mail copies of the original Complaint and copies of all responses to the office of the Executive Director, Regional Jail Authority.

Here, the defendants have provided the Court with an affidavit from John L. King, II, Chief of Operations for the West Virginia Regional Jail and Correctional Facility Authority. See dckt. 17 at Ex. 2; dckt. 20 at Ex. A. In his affidavit, Mr. King states that the plaintiff "has not filed any Inmate Grievance appeal concerning the subject matter of this litigation." Id. at ¶ 4. Moreover, attached to defendant Trent's Motion is a copy of all of the plaintiff's grievances related to the injury

---

[2] Porter at 524.

set forth in the complaint. The first grievance states that the plaintiff's hernia belt was confiscated and requests that it be returned. The second grievance requests that the plaintiff be assigned a job so that he may work off some of his time so he can "get out" earlier to get treatment for the hernia in his belly. The third grievance asserts that because he has a hernia in his belly, he was advised by the doctor to "not be on the floor." However, the plaintiff asserts that he was "found guilty" for telling a corrections officer that he could not be moved to the floor. In the fourth grievance, the plaintiff again sought a job assignment, but was denied for medical reasons.

In the complaint, the plaintiff complains that he incurred an injury while cleaning a shower which resulted in a "knot" forming in his belly. The plaintiff further asserts that he was denied medical treatment for more than three weeks. Finally, the plaintiff denies that the medical treatment he did receive was inadequate. Thus, the plaintiff seeks appropriate treatment. Clearly, although the plaintiff raised issues related to the alleged "knot" in his belly in the grievance system, the plaintiff did not raise any of the specific issues raised herein, nor could the Regional Jail Authorities reasonably have interpreted the plaintiff's grievances in a manner consistent with the claims raised in the instant complaint. Accordingly, the plaintiff has failed to exhaust his administrative remedies with regard to the issues raised in the complaint.

**B.  Deliberate Indifference**

Even had the plaintiff exhausted his administrative remedies, the plaintiff has failed to state a claim for which relief can be granted. Because it appears that the plaintiff was a pre-trial detainee at the time of the alleged assault, his claim is governed y the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979); Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). Nonetheless, pre-trial detainees are subject to

the same protection under the Fourteenth Amendment that prisoners receive via the Eighth Amendment. Hill v. Nicodemus, 979 F.2d 987, 999 (4th Cir. 1980).

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a

8

serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

1. Defendant Trent

In the complaint, the plaintiff names defendant Trent in his official capacity as the Administrator of the North Central Regional Jail. However, the plaintiff does not assert that defendant Trent was personally involved in the violation of his constitutional rights. Instead, it appears that the plaintiff names defendant Trent only in his official capacity as the overseer of the jail and its employees.

There is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); see also Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charges acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts

9

pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[3]

Because the plaintiff fails to allege any personal involvement on the part of defendant Trent, nor does he make any allegations which reveal the presence of the required elements for supervisory liability, the plaintiff fails to state a claim against defendant Trent.

2. Defendant Kitany

In the complaint, it appears that the plaintiff is merely complaining because he did not receive an outside consult for his alleged medical condition. Clearly, however, the plaintiff received some medical treatment. See dckt. 17 at Ex. 3 (plaintiff's medical chart). The mere fact that the plaintiff is dissatisfied with that treatment, or disagrees with the course of that treatment, is insufficient to support a claim of cruel and unusual punishment. See Wright v. Collins, supra.

### V. Recommendation

---

[3] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

In consideration of the foregoing, the undersigned makes the following recommendations:

(1) Defendant Trent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 17) be **GRANTED**.

(2) Defendant Kitany's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 20) be **GRANTED**.

(3) The complaint be **DENIED** and **DISMISSED with PREJUDICE**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: April 21, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE